UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER JAMES ATHERTON,

Plaintiff,

v.

DISTRICT OF COLUMBIA OFFICE
OF THE MAYOR *et al*,

Defendants.

Civil Action 04-0680 (HHK)

MEMORANDUM OPINION

In this civil rights action filed *pro se*, plaintiff challenges his removal on April 11, 2001,

from a grand jury convened in the Superior Court of the District of Columbia.  On April 5, 2007,

the Court entered judgment for the defendants.  The Court of Appeals for the District of

Columbia Circuit affirmed in part, reversed in part, and remanded the case for a determination of

whether defendants Suzanne Bailey-Jones and Daniel M. Zachem are protected by qualified

immunity from plaintiff's due process claim.  *See Atherton v. District of Columbia Office of the*

*Mayor*, 567 F.3d 672, 677 (D.C. Cir. 2009) (reversing dismissal of due process claims against

those defendants on ground of absolute immunity).[1]

Presently before the Court are the separate motions of Suzanne Bailey-Jones [Dkt. # 64]

and Assistant United States Attorney ("AUSA") Daniel Zachem [Dkt. # 66] to dismiss under

---

[1]  In addition to Bailey-Jones and Zachem, plaintiff had sued the District of Columbia
Office of the Mayor, the Superior Court Office of the Clerk, Superior Court Clerk Duane
Delaney, Director of Special Operations Division Roy Wynn, and the Department of Justice
Office of the Attorney General.  The dismissal of claims against those defendants was affirmed.

Fed. R. Civ. P. 12(b)(6), on the ground of qualified immunity, which plaintiff, by counsel, has opposed [Dkt. # 72].[2] Upon consideration of the parties' submissions and the relevant parts of the record, the Court will grant each defendant's motion to dismiss.

## I. BACKGROUND

The complaint allegations as recited by the D.C. Circuit are as follows.

Atherton is a D.C. resident with degrees in electrical and nuclear engineering. Compl. ¶¶ 1, 68. On April 9, 2001, he was sworn in as a D.C. Superior Court grand juror for a term scheduled to last 25 days. Id. ¶¶ 1, 16. However, on April 11, 2001, Atherton was permanently removed from the grand jury. Id. ¶¶ 22-24.

Atherton and the grand jurors with whom he served were given jury instruction books identifying crimes and their elements. Atherton believed that some of the cases for which indictments were being sought included alleged crimes which were not in the instruction book. Id. ¶ 18. Concerned that grand jurors had voted to indict without knowing the elements of the crimes, Atherton requested additional information from an AUSA on the elements of crimes that were not contained in the instruction book. Id. ¶¶ 18-19. Some jurors "seemed upset" because they had voted to indict without knowledge of the elements "and a new vote would be needed once the elements of the charge were known." Id. ¶ 20. Atherton "felt a hostile attitude from a few members of the jury when there was continuing rebuttal to every comment [he] made concerning deliberation on elements of crimes." Id. ¶ 66.

Atherton also felt that his fellow grand jurors reacted negatively to his Hispanic ethnicity. At one point during their deliberations, the grand jury was considering a homicide case involving an altercation between black and Hispanic individuals. After a Hispanic witness had finished testifying, Atherton thanked the witness in Spanish. Atherton subsequently perceived hostility from other grand jurors based on this incident. Id. ¶¶ 64-67. He is half Mexican and "was the only semi-fluent [S]panish speaking grand juror." Id. ¶ 67.

During the course of grand jury deliberations on April 11, 2001, supervising AUSA Zachem entered the jury room where the grand jurors were deliberating, confiscated Atherton's notes, and directed Atherton to immediately report to Wynn's office. Id. ¶ 23-24. Atherton went to Wynn's office as he had been instructed. Id. Atherton was then directed to Bailey-Jones, who "permanently dismissed" him. Id.

---

[2] The Court appreciates the pro bono assistance of David T. Ralston, Jr., and Benjamin R. Dryden of Foley & Lardner LLP, appointed from the Court's Civil Pro Bono Panel to represent plaintiff.

¶ 24. Atherton "was never permitted the opportunity to defend himself," *id*. ¶ 28, and Bailey-Jones did not provide reasons for his dismissal, other than that he was allegedly "disruptive." *Id*. ¶ 24. Atherton asked for a written explanation and Bailey-Jones assented to this request. However, written notice was never given. *Id*. ¶¶ 28, 44. "Atherton left feeling very humiliated, embar[r]assed and questioning his self worth, and did not return to grand jury duty." *Id*. ¶ 27.

*Atherton*, 567 F.3d at 678.

## II. DISCUSSION

1.  Qualified Immunity

Qualified immunity from suit ordinarily attaches to government officials performing discretionary functions unless the official "'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . ." *Harlow v. Fitzgerald*, 457 U.S. 800, 813 (1982) (quoting *Wood v. Strickland*, 420 U.S. 308, 322(1975)); *accord Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998). An official enjoys protection from a lawsuit "where [his or her] conduct is objectively reasonable in light of existing law." *Farmer*, 163 F.3d at 613. On the other hand, an official is not shielded where he "could be expected to know that certain conduct would violate statutory or constitutional rights." *Id*. The "qualified immunity analysis is identical" whether brought against a state official, such as Bailey-Jones, under 42 U.S.C. § 1983 or a federal official, such as Zachem, under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Wilson v. Layne*, 526 US. 603, 609 (1999).

To overcome an immunity defense, a plaintiff must show "that the defendant violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Harlow*, 457 U.S. at 818. "The contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *accord Butera v. District of Columbia*, 235 F.3d 637, 646 (D.C. Cir. 2001).  Whether an official has qualified immunity is resolved by a two-step inquiry. The threshold question is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*.  If the plaintiff's rights were violated, the court must then assess whether, "in light of the specific context of the case," the right in question was "clearly established." *Id*.

The foregoing sequence "should not be regarded as an inflexible requirement," *Pearson v. Callahan*, 555 U.S. 223, 227 (2009), and it is not mandatory. *Id*. at 236.  Rather, "courts . . . [are] permitted to exercise . . . discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*.  As the Court observed in *Pearson*, "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id*. at 237.  Because this is such a case, the Court will address the second prong of the qualified immunity analysis first.  *See Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011) (determining that "the principle of constitutional avoidance counsels that we turn directly to the second question" concerning qualified immunity) (quoting *Pearson*); *Atherton*, 567 F.3d at 690 ("the District Court retains the discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first . . . .' ") (quoting *Pearson*).

Whether a statutory or constitutional right was clearly established at the time of the

official's conduct is "an 'essentially legal question.' " *Crawford-El v. Britton*, 523 U.S. 574, 588

(1998) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526-29 (1985)).  It is not enough simply to

allege the violation of a clearly established but conceptually broad right, such as the right to due

process, or the right to equal protection under the law.  *See Ashcroft v. al-Kidd*, — U.S. —, 131

S.Ct. 2074, 2084 (2011) ("We have repeatedly told courts . . . not to define clearly established

law at a high level of generality.") (citations omitted).  Rather, "the right the official is alleged to

have violated must have been 'clearly established' in a more particularized, and hence more

relevant, sense: The contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640; *see al-

Kidd*, — U.S. —, 131 S.Ct. at 2083 ("We do not require a case directly on point, but existing

precedent must have placed the statutory or constitutional question beyond debate.").

"Reasonable knowledge of the law means . . . knowledge of present constitutional law [and]

involves knowledge only of legal rules that were 'clearly established' at the time of the conduct

at issue." *Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C. Cir. 1991) (citation omitted).

Thus, "[w]hen properly applied, [qualified immunity] protects 'all but the plainly incompetent or

those who knowingly violate the law.' " *al-Kidd*, 131 S.Ct. at 2085 (quoting *Malley v. Briggs*,

475 U.S. 335, 341 (1986)).

2.  Analysis

The question is whether in April 2001, defendants Bailey-Jones and Zachem should have

reasonably known that their actions were unconstitutional.  Plaintiff admits that he "is not aware

of decisions specifically addressing the procedural due process rights of impaneled grand jurors .

. . ."  Pl.'s Mem. of P. & A. in Opp'n to Defs.' Motions to Dismiss ("Pl.'s Mem.") [Dkt. # 72] at

27. He surmises, however, that none is available because "wrongfully dismissed jurors lack any incentive to vindicate their rights through litigation." *Id*. at 31, n.8. Nevertheless, plaintiff cites cases addressing the removal of jurors during trial, *see* Pl.'s Mem. at 27-30, but wisely refrains from relying on those cases because it is established that, unlike a petit jury, "the grand jury is an institution separate from the courts . . . [and] that, as a general matter at least, no [] 'supervisory' judicial authority exists . . . ." *United States v. Williams*, 504 U.S. 36, 47 (1992); *see United States v. Coachman*, 752 F.2d 685, 690-91 (D.C. Cir. 1985) ("The trial of an indictment serves a purpose different from that accomplished by a grand jury investigation . . . . A grand jury investigating a suspect and a court trying an accused [] engage in separate and dissimilar functions. Indeed, when felony is the charge, a grand jury must complete its investigation and return an indictment before the factfinding process of a trial ever begins.") (footnote omitted). Given these fundamental differences, a trial judge's supervision over a petit jury at trial is incomparable to "[j]udges' direct involvement in the functioning of the grand jury [that] has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office." *Williams*, 504 U.S. at 47; *see id*. at 50 (suggesting "that any power federal courts may have to fashion . . . rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own proceedings.") (citation omitted).

Bailey-Jones reasonably counters that in the absence of "pre-existing law prohibiting [her] actions, the unlawfulness of her actions is not apparent" to a "reasonable official." Reply to Pl.'s Opp'n and in Further Support of Def. Suzanne Bailey-Jones' Mot. to Dismiss [Dkt. # 77] at 2. *See Wilson*, 526 U.S. at 615-16 (holding "that it was not unreasonable for a police officer in April 1992 to have believed that bringing media observers along during the execution of an arrest

warrant (even in a home) was lawful" where "in 1992 there were no judicial opinions holding

that this practice became unlawful when it entered a home."); *Bame*, 637 F.3d at 386 (finding

U.S. Marshal protected by qualified immunity where "the law in 2002 did not clearly establish

that strip searching all male arrestees prior to placement in holding cells at the Superior Court

violated the Fourth Amendment."). District of Columbia law generally authorizes the removal of

a juror on the basis that his service "would be likely to disrupt the proceedings[,]" D.C. Code §

11-1908(b)(1), but it makes no distinction between a member of a petit jury and one of a grand

jury.[3] The statute mandates that "[t]he procedures for challenges to and review of exclusions

from jury service shall be set forth in the jury system plan." D.C. Code § 11-1908(c). The

Superior Court rule in effect at the time of plaintiff's removal stated that:

> A grand jury ordered by the Superior Court shall serve until discharged by the
> Chief Judge or other judge designated by the Chief Judge; but no grand jury may
> serve more than 18 months unless the Chief Judge or designee extends the service
> of the grand jury for a period of 6 months or less upon a determination that such
> extension is in the public interest. *At any time for cause shown, the Chief Judge or
> other judge designated by the Chief Judge may excuse a juror either temporarily
> or permanently,* and in the latter event the Chief Judge or designee may impanel
> another person in place of the juror excused.

D.C. Sup. Ct. R. Crim. P. 6(g) (emphasis added). However, in his initial opposition papers,

plaintiff proffered evidence showing that no system was in place to implement the rule. Notably,

in an Affidavit signed on November 14, 2006, former Superior Court Chief Judge Rufus G.

King, III, who "had only recently accepted [that] position" in April 2001, stated that "there were

no formal procedures in place in April 2001 for disciplining jurors." Affidavit of Rufus G. King,

III, Chief Judge [Dkt. # 40-5] ¶ 4. Judge King also stated that he "was never contacted by anyone

---

[3] Plaintiff had also claimed that he was dismissed based on invidious discrimination, which is prohibited under the Constitution's equal protection clause and D.C. Code § 11-1903, but the D.C. Circuit found that plaintiff had failed to state a discrimination claim. *See Atherton*, 567 F.3d at 687-89.

from the Court's jury office or the U.S. Attorney's office before or at the time of the removal of

grand juror Atherton," but "[t]he practice then in place did not include contacting the chief judge

before a grand juror was involuntarily dismissed." King Aff. ¶ 4. Judge King changed the

procedures "[s]ince then . . . to require that [he] be consulted before imposition of any grand jury

discipline." *Id*.

Plaintiff also proffered Bailey-Jones' job description of Juror Officer that presumably was

controlling in 2001. Pl.'s Ex. 4 [Dkt. # 40-4] (Juror Officer (Revised 4-14-97)). The

overarching responsibility of the Juror Officer was to assure the "smooth operation of the

Superior Court's Jury System." *Id*. at 6 (page number supplied). Because the position was

"highly visible and project[ed] an image of the court, [the] [i]ncumbent [was to] always exercise

tact, good judgment and discretion in making independent decisions and interacting with jurors

[and] correctly interpret all legislation and policies that govern the Juror's office." *Id*. at 5.

Among the Juror Officer's varied responsibilities was to make "quick decisions concerning the

qualifying, deferring or excusing of jurors[.]" *Id*.

Given (1) the absence of any legal precedent at the relevant time establishing the alleged

due process right, (2) the absence in 2001 of any formal procedures for (and judicial involvement

in) removing grand jurors in Superior Court, (3) the apparent informal practice of delegating

grand juror removal decisions to the Juror Officer, and (4) the Juror Officer's job description

implicitly authorizing the practice, the Court finds that, even if a constitutional right exists in

serving on a grand jury, defendants could not have reasonably known that their removal of

plaintiff from the grand jury in April 2001 violated any "clearly established statutory or

constitutional rights of which a reasonable person would have known." *Crawford-El*, 523 U.S. at

588; *see Wilson*, 526 U.S. at 617 ("Given such an undeveloped state of the law, the officers in

this case cannot have been 'expected to predict the future course of constitutional law.' ")

(quoting *Procunier v. Navarette*, 434 U.S. 555, 562 (1978)).

### III.  CONCLUSION

For the foregoing reasons, the Court finds that the moving defendants are protected by

qualified immunity and, thus, will grant their respective motions to dismiss.  A separate, final

order accompanies this Memorandum Opinion.


_____s/s_____
Henry H. Kennedy, Jr.
United States District Judge

Date: September 26, 2011